The PEOPLE of the State of Colorado, Petitioner–Appellee, In the Interest of C.G., a Child,

and Concerning K.G., Respondent– Appellant.

No. 93CA1969.

Colorado Court of Appeals, Div. IV.

Oct. 20, 1994.

George H. Hass, County Atty., Linda K. Dahn, Asst. County Atty., Fort Collins, for petitioner-appellee.

John Traphagan Vap, P.C., John T. Vap, Loveland, for respondent-appellant.

Opinion by Judge CASEBOLT.

K.G. (father) appeals a trial court judgment terminating the parent-child legal relationship between him and his child, C.G. We affirm.

At the time of the termination hearing, father was in the custody of the Colorado Department of Corrections serving a sentence on a felony conviction. Because father was indigent, his attorney filed a motion seeking an order requiring the Fremont County sheriff to transport father to the hearing in Larimer County at State expense.

The trial court denied the motion finding that the State had no constitutional or statutory obligation to provide the requested transportation. It further found that father would be present at the hearing through counsel who could call witnesses to testify on

father's behalf and could cross-examine the State's witnesses. The trial court ordered that father could present his testimony and submit rebuttal testimony by deposition or affidavit.

The termination hearing was held as scheduled, and father's parental rights were terminated. During the hearing, father's attorney cross-examined the State's witnesses, but he did not offer any direct testimony through deposition, affidavit, or otherwise. Furthermore, counsel did not seek to submit rebuttal testimony.

On appeal, father contends that the trial court's order denying the motion to transport him to the termination hearing at State expense denied his due process rights under both the Fourteenth Amendment and Colo. Const. art. II, §§ 3 & 25. He also contends that the trial court's order violated his right to equal protection of the laws under Colo. Const. art. II, § 25, because an unincarcerated parent could attend such a hearing. He also contends the trial court erred in refusing to consider his request for payment of the costs of his own deposition made during the hearing on the motion to transport. We disagree with all of these contentions.

## I. Due Process

■ As regards proceedings for the termination of a parent-child legal relationship: "Due process requires that [a] respondent be given notice of the termination proceedings and an opportunity to be heard or defend and to have the assistance of legal counsel." *People in Interest of V.M.R.*, 768 P.2d 1268, 1270 (Colo.App.1989).

■ An action for termination of the parent-child legal relationship is a civil action; therefore, neither due process nor other constitutional guarantees confer a right of confrontation on a respondent or require his presence at a termination hearing. Thus, if a respondent has an opportunity to appear through counsel and is given an opportunity to present evidence and cross-examine witnesses through deposition or otherwise, his due process rights are not violated. *See People in Interest of V.M.R., supra; In Interest of F.H.*, 283 N.W.2d 202 (N.D.1979);

*In Interest of Darrow*, 32 Wash.App. 803, 649 P.2d 858 (1982), review denied 98 Wash.2d 1008.

■ Here, father was represented by counsel prior to and during the termination hearing, and he was given an opportunity to present testimony by deposition or affidavit. Thus, his right to due process was not violated by his absence at the termination hearing. *See People in Interest of V.M.R., supra.*

We are not persuaded by father's arguments which seek to distinguish *V.M.R.* from the matter at hand because the respondent in *V.M.R.* was incarcerated in another state which had no duty to produce the respondent for a termination hearing in Colorado. Neither the Colorado Children's Code, § 19–1–101, et seq. (1994 Cum.Supp.), nor any other statutory provisions require the State to transport or to assure the presence, at its expense, of an incarcerated parent who is represented by counsel at a termination hearing. *See People in Interest of V.M.R., supra.* We conclude that the due process analysis set forth in *V.M.R.* is applicable to respondents incarcerated in Colorado as well as to those incarcerated in other states. *See In Interest of J.S.*, 470 N.W.2d 48 (Iowa Ct.App.1991).

■ Contrary to father's assertion, §§ 30–10–514 and 30–10–515, C.R.S. (1986 Repl.Vol. 12A) do not require the sheriff to transport prisoners to civil court proceedings in which prisoners are a party; these statutes merely require the sheriff to transport prisoners to their proper place of confinement and to serve and execute writs in accordance with the law.

■ We presume that father's petition for "writ ad testificandum" intended to request the issuance of a writ of habeas corpus ad testificandum available under § 13–45–119, C.R.S. (1987 Repl.Vol. 4A).

The cited provision states, in pertinent part:

The ... district courts ... have power to issue writs of habeas corpus to bring the body of any person confined in any jail before them to testify.... The party praying out such writ of habeas corpus shall pay to the officer executing the same

a reasonable sum for his services as adjudged by the courts respectively.

By its use of the mandatory language "shall pay," the statute requires payment by the person seeking the issuance of the writ for "services," which would include at a minimum the costs of transportation.

We need not address whether Colo. Const. art. II § 6 would require a different result, since no contention based on that provision is raised by father.

Hence, we perceive no violation of due process under these circumstances.

## II.  Equal Protection
### A.

We reject father's contention that his right to equal protection was violated by the trial court's order.

Father contends that the trial court's decision declining to order the sheriff to transport him at State expense to the hearing denied him the right to participate in the termination proceedings to the same extent as other indigent, non-incarcerated parents. We disagree.

▆ In analyzing rulings challenged on equal protection grounds, we must examine the purpose and effects of the ruling in question and the nature of the right alleged. Because equal protection of the law is denied only when a law has a special impact on less than all the persons subject to its jurisdiction, a threshold determination of whether persons allegedly subject to disparate treatment by governmental act are in fact similarly situated must be made in every case. *Bath v. Department of Revenue*, 758 P.2d 1381 (Colo.1988).

▆ If a ruling applies evenhandedly to all persons within the jurisdiction and does not have a special impact on less than all the persons subject to its jurisdiction, there is no equal protection issue to review. *Board of County Commissioners v. Flickinger*, 687 P.2d 975 (Colo.1984).

▆ Moreover, if a law does not classify individuals, no equal protection issue is presented. R. Rotunda & J. Nowak, *Treatise on Constitutional Law: Substance and Procedure* § 18.1 (2d Ed.1992).

▆ No group of individuals is entitled by law to be transported at State expense to parental termination hearings. Indigent non-incarcerated individuals are thus not granted special preference over incarcerated indigent individuals. Hence, the trial court's ruling does not create a classification nor have a special impact on father.

Nor is father in fact similarly situated to indigent non-incarcerated parents. His being incarcerated precludes a finding of similarity in situation.

We therefore conclude that no legitimate equal protection issue is presented here.

### B.

Finally, we find no merit in father's contention that the trial court erred by refusing to consider his request for payment of the costs of his own deposition, which was made during the hearing on the motion to transport.

▆ The trial court determined that the question was not properly before it, but that counsel could later apply to the court for that relief. However, father's counsel did not renew the request either before, during, or after the termination hearing. Furthermore, father was given the opportunity to present testimony by affidavit which could be secured without appreciable cost, but he did not do so. Nor did father's counsel request that the trial court take father's testimony by telephone or tape recording, procedures which would have minimized expense and allowed personal participation to some degree.

Thus, we must attribute the lack of father's testimony to deliberate strategy choices of counsel. *See People in Interest of V.M.R., supra.*

Finally, the record does not disclose that father made any offer of proof to indicate how, if at all, he would have testified. Hence, we are unable to discern that the termination proceedings would have been affected in any appreciable way.

The judgment terminating the legal relationship between father and C.G. is affirmed.

MARQUEZ and ROTHENBERG, JJ., concur.