The summaries of the Colorado Court of Appeals published opinions constitute no part of the opinion of the division but have been prepared by the division for the convenience of the reader. The summaries may not be cited or relied upon as they are not the official language of the division. Any discrepancy between the language in the summary and in the opinion should be resolved in favor of the language in the opinion.

SUMMARY
October 17, 2019

## 2019COA157

**No. 18CA2073,** *People in Interest of KNBE* **— Juvenile Court — Dependency and Neglect — Termination of the Parent-Child Legal Relationship — Expert Testimony; American Indian Law — ICWA; Constitutional Law — Due Process**

A division of the court of appeals holds that a parent whose parental rights may be terminated in a dependency and neglect proceeding does not have a due process right to have an attorney present during an interview with an expert retained by the Department of Human Services.

COLORADO COURT OF APPEALS                                    **2019COA157**

Court of Appeals No. 18CA2073
City and County of Denver Juvenile Court No. 17JV275
Honorable Donna J. Schmalberger, Judge

The People of the State of Colorado,

Petitioner-Appellee,

In the Interest of K.N.B.E. and M.B.B.E., Children,

and Concerning K.B.E.,

Respondent-Appellant.

JUDGMENT AFFIRMED

Division VII
Opinion by JUDGE J. JONES
Fox and Tow, JJ., concur

Announced October 17, 2019

Kristin M. Bronson, City Attorney, Laura Grzetic Eibsen, Assistant City
Attorney, Denver, Colorado, for Petitioner-Appellee

Barry Meinster, Guardian Ad Litem

Tammy Tallant Law, LLC, Tammy Tallant, Palisade, Colorado, for Respondent-
Appellant

¶ 1     This is a dependency and neglect case.  K.B.E. (mother) appeals the juvenile court's judgment terminating her parent-child legal relationships with twins K.N.B.E. and M.B.B.E. (the children). She argues that the juvenile court erred by allowing testimony and evidence from a qualified expert witness obtained in an interview with her because she didn't have her attorney with her during that interview.  We conclude, however, that mother didn't have a right to have counsel present during the interview, and therefore we affirm.

## I.  Background

¶ 2     The Denver Department of Human Services filed a petition in dependency and neglect alleging that mother had tested positive for marijuana and amphetamine when she was admitted to the hospital just before the children were born.  The petition also alleged that the children had stayed in the hospital for nearly a month after being born to address problems stemming from prematurity and drug exposure and that mother was homeless and had nowhere to take the children when released from the hospital.

¶ 3     Mother is a member of the Northern Cheyenne Tribe (the Tribe).  After verifying that the children were also eligible to be enrolled, the Tribe accepted the children for enrollment and

intervened in the case.  At mother's counsel's request, the juvenile court appointed a guardian ad litem for mother.

¶ 4     The court accepted mother's admission to the petition and adjudicated the children dependent and neglected.  The juvenile court adopted a treatment plan requiring mother to, among other things, participate in substance abuse and mental health evaluations and follow through with recommended treatment, maintain stable housing, obtain legal employment, and visit the children regularly.

¶ 5     Acting pursuant to the Indian Child Welfare Act (ICWA), the Department retained an expert to determine whether allowing mother to retain custody of the children was likely to result in serious emotional or physical harm to the children.  As part of his evaluation, that expert spoke with mother over the telephone.

¶ 6     Some time later, the Department moved to terminate mother's parent-child relationships with the children.  Following a hearing, at which the expert testified, the juvenile court terminated mother's parental rights.

## II. Relevant Law

¶ 7    A juvenile court can terminate parental rights if it finds, by clear and convincing evidence, that (1) the child was adjudicated dependent and neglected; (2) the parent didn't comply with an appropriate, court-approved treatment plan or the plan wasn't successful; (3) the parent is unfit; and (4) the parent's conduct or condition is unlikely to change within a reasonable time. § 19-3-604(1)(c), C.R.S. 2019; *People in Interest of C.H.*, 166 P.3d 288, 289 (Colo. App. 2007).

¶ 8    And when, as in this case, the termination proceedings concern Indian children, ICWA imposes additional federal prerequisites to termination. 25 U.S.C. § 1902 (2018); *People in Interest of A.R.*, 2012 COA 195M, ¶ 39. As relevant to this case, a court may not terminate parental rights as to an Indian child unless evidence, including testimony of a qualified expert witness, establishes beyond a reasonable doubt that the parent's continued custody of the child is likely to result in serious emotional or physical harm to the child. 25 U.S.C. § 1912(f) (2018); *A.R.*, ¶ 39.

## III.  Right to Counsel

¶ 9     Mother's counsel filed a motion in limine seeking to exclude the testimony and report of the qualified expert witness from the termination hearing.  Counsel argued that because the expert had obtained information from mother during an interview that took place without her counsel or the guardian ad litem being present to assist her, allowing the expert to testify and introduce his report would violate mother's right to due process.  After hearing argument, the juvenile court denied the motion.

¶ 10    On appeal, mother contends again that the interview with the qualified expert witness violated her procedural due process rights. As a result, she says, the juvenile court should have excluded the expert's testimony and report.

¶ 11    We review a procedural due process claim de novo.  *See People in Interest of C.J.*, 2017 COA 157, ¶ 25.

¶ 12    "[T]o establish a violation of due process, one must first establish a constitutionally protected liberty interest that warrants due process protections."  *Id.* (quoting *M.S. v. People*, 2013 CO 35, ¶ 22).  Although not articulated in her brief, mother's due process argument appears to attempt to import into dependency and neglect

4

proceedings the criminal law concept that, under the Sixth Amendment, a criminal defendant has the right to have counsel present at all critical stages of the proceeding once she is charged with a crime. *Iowa v. Tovar*, 541 U.S. 77, 80-81 (2004).

¶ 13    A party to a dependency and neglect proceeding, however, isn't entitled to the same due process rights as a defendant in a criminal proceeding. *See People in Interest of C.G.*, 885 P.2d 355, 357 (Colo. App. 1994) (an action to potentially terminate the parent-child legal relationship is a civil action and therefore due process doesn't confer certain rights available in criminal proceedings). Moreover, an indigent parent's right to court-appointed counsel in a proceeding that potentially terminates parental rights is entirely statutory; it isn't secured by constitutional mandate. *C.H.*, 166 P.3d at 290. If a respondent parent has an opportunity to appear through counsel and has an opportunity to present evidence and cross-examine witnesses, the parent's due process rights aren't violated. *See C.G.*, 885 P.2d at 357; *see also A.M. v. A.C.*, 2013 CO 16, ¶ 29 ("Parents are entitled to notice of the allegations supporting the motion to terminate, to have a hearing on the

motion, and, *at that hearing*, to be assisted by legal counsel.")
(emphasis added).

¶ 14    Mother was represented by counsel at the termination
hearing. That attorney cross-examined the qualified expert witness
at length. Mother's counsel also presented the report and
testimony of mother's own expert. We are persuaded that these
procedural safeguards sufficiently protected mother's due process
rights.

¶ 15    Our determination squares with the decisions of other
divisions of this court considering whether respondent parents had
a right to counsel under analogous circumstances. *Cf. People in
Interest of S.L.*, 2017 COA 160, ¶¶ 49-50 (juvenile court didn't
abuse its discretion by denying father's request for his counsel to be
present during an in camera interview of a child who was the
subject of a dependency and neglect petition); *C.J.*, ¶¶ 29-30
(mother wasn't entitled to participate, and have the assistance of
counsel, in the Department's administrative review of placement
where she was afforded a full opportunity to be heard and to
present evidence at a motions hearing and the termination hearing).

¶ 16    We aren't persuaded by mother's argument that she had a right to counsel because an interview with an expert witness is a "child-custody proceeding" as that phrase is defined by ICWA. The Guidelines for Implementing ICWA recommend that a qualified expert witness "be someone familiar with" the children in the case and suggest that the expert contact the parents to provide a more complete picture to the court. Bureau of Indian Affairs, Guidelines for Implementing the Indian Child Welfare Act 55 (Dec. 2016), https://perma.cc/3TCH-8HQM. But nothing in ICWA's language or in the Guidelines indicates that a parent is entitled to counsel during such contacts with a qualified expert witness, *see* 25 U.S.C. § 1912(a); 25 C.F.R. § 23.2 (2019), and mother doesn't cite any authority supporting such an interpretation.[1]

---

[1] Moreover, if we were to adopt mother's argument that an interview with a qualified expert witness is a "child-custody proceeding" as defined by ICWA, all of the notice procedures — such as notice to the Tribe by registered mail with return receipt requested and a ten-day waiting period before the proceeding could be held — would apply. *See* 25 U.S.C. § 1912(a) (2018); 25 C.F.R. § 23.2 (2019); § 19-1-126(1)(b), C.R.S. 2019; *B.H. v. People in Interest of X.H.*, 138 P.3d 299, 302 (Colo. 2006) (when the court knows that an Indian child is involved in a "child custody proceeding" the state must provide notice to the child's tribe).

¶ 17 Because we determine that mother didn't have a due process right to counsel during the interview, we don't need to address her contention that the juvenile court erred by refusing to exclude evidence and testimony about the statements she made to the qualified expert witness.

## IV. Conclusion

¶ 18 We affirm the judgment.

JUDGE FOX and JUDGE TOW concur.